UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LUZ CASCINA,**<br><br>   **Plaintiff,**<br><br>v.<br><br>**HACKENSACK UNIVERSITY MEDICAL CENTER n/k/a HACKENSACK MERIDIAN HEALTH AND JOHN/JANE DOES A THROUGH D,**<br><br>   **Defendants.** | Civ. No. 19-17571 (KM) (ESK)<br><br>**OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

  Plaintiff Luz Cascina, an Outpatient Reservation Specialist employed in the infusion center of the Hackensack University Medical Center ("HUMC"), has sued HUMC for violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623(a); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000; and the parallel provisions of the New Jersey Law Against Discrimination, ("NJLAD"), N.J. Stat. Ann. § 10:5–12. HUMC now moves for summary judgment (DE 25), arguing that some of Cascina's claims are time-barred and that she is not able to meet her burden to present facts to prove discrimination on the other claims.

  For the reasons set forth below, HUMC's motion for summary judgment is **GRANTED.**

1

## I.  Background[1]

The plaintiff, Luz Cascina, is a sixty-two-year-old woman of Colombian origin, a fact relevant to her claims. (DE 25-2 ¶ 1.) She began working as an Insurance Verification Clerk at HUMC in 1999 and has worked as an Outpatient Reservation specialist since 2003. (*Id.* ¶ 2–4.) At no point was Cascina ever demoted, and she regularly received annual raises. (*Id.* ¶ 7.) Cascina alleges that at various times during her employment she was mocked and harassed for her Spanish accent. (Compl. ¶ 21.) Cascina was denied access to CPR recertification courses, while a younger employee was permitted to attend. (DE 25-5 at 84–87; DE 25-19 at 255–56; Compl. ¶ 39.) In addition, in January 2018, she overheard her supervisor make a statement to the effect of "sometimes people don't produce too much when they get older and sick… so they have to retire." (DE 25-5 at 182–83.) She also received written reprimands and a three-day suspension in the summer of 2017 for repeatedly viewing her medical records in violation of HUMC policy, discipline which she alleges was a result of national origin discrimination. (DE 25-2 ¶ 12–18; Compl. ¶ 42.) Cascina appealed her suspension through all three phases of HUMC's dispute resolution procedure and it was upheld. (DE 25-2 ¶ 19–27.)

On January 3, 2018, Cascina slipped and fell at HUMC and injured her knees and back. (DE 25-2 ¶ 31–32.) Cascina returned to work approximately two weeks later with no medical restrictions. (*Id.* ¶ 35.) Cascina testified that upon returning to work in January 2018, she requested that her supervisor not require her to walk long distances, but that her request was denied. (DE 25-19

---

[1]  For ease of reference, certain key items from the record will be abbreviated as follows:

|  |  |  |
|---|---|---|
| "DE_" | = | Docket Entry in this Case |
| "Compl." | = | Complaint (DE 1) |
| "Def. Brf." | = | Defendant's Brief in Support of Summary Judgment (DE 25-1) |
| "Pl. Brf." | = | Plaintiff's brief in opposition of Summary Judgment (DE 26) |

at 221–22.) That was the only accommodation she ever requested. (*Id.* at 255.) Cascina went on medical leave starting March 15, 2018, and has not returned to work since then. (DE 25-2 ¶ 36). Cascina applied for Social Security Disability Insurance benefits in June 2019 and in August 2019. The Social Security Administration issued a determination that Cascina was permanently disabled as of March 15, 2018. (*Id.* ¶ 41, 44.)

On January 4, 2019, Cascina filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 47.) On June 4, 2019, the EEOC issued a Dismissal and Notice of Rights. (*Id.* ¶ 48.) On September 3, 2019, Cascina filed this action, and on March 19, 2021, HUMC moved for summary judgment. (*Id.* ¶ 49; DE 25.) Cascina filed papers in opposition (DE 26), and HUMC filed a reply (DE 27). The matter is fully briefed and ripe for decision.

## II.     Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See *Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt

as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; see also Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

  In deciding a motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). That "evidentiary burden" is discussed in detail below.

### III. Discussion

#### a. Time-barred Federal Claims

Summary judgment is an appropriate stage to examine whether claims are barred by the applicable statute of limitations. *See Cunningham v. M & T Bank Corp.*, 814 F.3d 156, 160 (3d Cir. 2016), as amended (Feb. 24, 2016). Because the statute of limitations is an affirmative defense, and because HUMC has moved for summary judgment, HUMC bears the burden to demonstrate that Cascina's claims are time-barred. *See Richard B. Roush, Inc. Profit Sharing Plan v. New Eng. Mut. Life Ins. Co.*, 311 F.3d 581, 585 (3d Cir. 2002). I can grant summary judgment on the issue only if I determine that there is no genuine dispute as to any fact material to the statute of limitations issue.

Cascina asserts federal claims under the ADA, the ADEA, and Title VII of the Civil Rights Act. All three statutes require an aggrieved party to file a complaint with the EEOC within 300 days after the occurrence of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1); *Churchill v. Star Enters.*, 183 F.3d 184, 190 (3d Cir. 1999) (stating that ADA follows the administrative procedures set forth in Title VII); *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 469-70 (3d Cir. 2001) (Title VII); *Griffin v. Dep't of Hum. Servs.*, 2019 WL 3369783 (D.N.J. July 26, 2019), *aff'd*, 2021 WL 3780078 (3d Cir. Aug. 26, 2021) (ADEA). If a claim is not part of a continuing violation (analyzed below), it is time-barred if it did not occur within the 300-day statute of limitations lookback period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109–10 (2002). Cascina submitted her EEOC questionnaire on January 4, 2019. (DE 25-2 ¶ 47). Thus, the statute of limitations bars any federal claim that accrued more than 300 days before January 4, 2019—*i.e.*, before March 10, 2018. It was just four days later, on March 14, 2018, that Cascina ceased working at HUMC, suggesting that the temporal window may be a very narrow one. HUMC moves for summary judgment on all of Cascina's federal claims because all allegations of unlawful employment practices took

place before March 10, 2018. (Def. Br. at 11.) I take each of Cascina's claims in order and determine when the alleged unlawful employment practices took place to determine if each is time-barred.

First, I analyze Cascina's claims under the ADA. Cascina testified that she requested an accommodation only once: upon her return to work in January 2018, when she asked that she not be required to walk long distances. (DE 25-19 at 255.) Her request was declined. (*Id.* at 221–22.) At no other point, including in the years since she has been on medical leave, has she requested any additional accommodation. (*Id.* at 266–67.) Thus, the only alleged failure to accommodate Cascina's disability took place in January 2018, outside of the 300-day statute of limitations period. Any ADA claim based on that failure to accommodate is therefore time-barred.[2]

Second, I analyze Cascina's two claims under the ADEA. (1) Cascina claims that her supervisor's refusal to allow her to take part in CPR recertification training was discriminatory, noting that a younger employee, Paula Cortez, was permitted to attend the training sessions. (DE 25-5 at 84–87; DE 25-19 at 255–56; Compl. ¶ 39.) Cascina testified that she took CPR classes, but stopped doing so, apparently because her employer did not authorize further training, in 2014. (DE 25-5 at 85.) She produced no evidence that she asked to attend classes thereafter, or that any such requests were refused. She testified that she believed Cortez, the younger employee, was permitted to attend CPR training in 2016 or 2017, but Cascina could not recall the date more specifically. (DE 25-19 at 256.) The upshot is that neither party points to any evidence that Cascina was refused authorization to attend CPR courses at any time after the cutoff date of March 10, 2018. (2) Cascina testified that she overheard her supervisor make a statement in January 2018 to the effect of "sometimes people don't produce too much when they get older and sick… so

---

[2] Insofar as Cascina's claim can be construed to continue after March 10, 2018, it fails for the reasons outlined below in the discussion of the merits of her NJLAD claim.

6

they have to retire." (DE 25-5 at 182–83.) As evidence of discrimination, this is vague, but as relevant here, it occurred outside of the limitation period.

The record would not support a jury inference that the incidents upon which Cascina bases her ADEA claims occurred after March 10, 2018. Her ADEA claims are therefore time-barred.

Third, I analyze Cascina's claims under Title VII of the Civil Rights Act of 1964. She alleges that her written reprimands and the three-day suspension for accessing her own medical records were motivated by animus based on her national origin. (DE 25-2 ¶ 12–18; Compl. ¶ 42.) The most recent of these actions, the three-day suspension, occurred in the summer of 2017, well before March 10, 2018. Cascina's Title VII claims are therefore time-barred.

### b. Time-barred NJLAD Claims

The NJLAD has a two-year statute of limitations. *See Thomas v. Care Plus of New Jersey, Inc.*, 484 F. App'x 692, 693 (3d Cir. 2012); *Montells v. Haynes*, 133 N.J. 282 (N.J. 1993). The NJLAD, unlike the federal claims discussed above, does not require a claimant to seek an administrative remedy before suing in a court. *Hernandez v. Region Nine Hous. Corp.*, 146 N.J. 645 (1996). A plaintiff can therefore sue immediately upon the occurrence of an unlawful employment practice. The statute of limitations for an NJLAD claim is not tolled by a plaintiff's pursuit of a federal administrative claim before the EEOC. *Taylor v. Computer Scis. Corp.*, 2021 WL 3464790, at *5 (D.N.J. Aug. 6, 2021) (quoting *Omogbehin v. Dimensions Int'l, Inc.*, 2009 WL 2222927, at *3 (D.N.J. July 22, 2009)). Cascina filed this lawsuit on September 3, 2019. Thus, any NJLAD claim that accrued before September 3, 2017 is time-barred. I examine her three NJLAD claims separately.

First, Cascina's NJLAD failure-to-accommodate claim accrued in January 2018. That is within the statute of limitations for the NJLAD, and therefore is not time-barred. (DE 25-19 at 221–22, 255.)

Second, Cascina alleges that she was first forbidden from attending CPR certification courses in 2014, and there is no evidence of further refusals

thereafter. (DE 25-5 at 84–87; DE 25-19 at 255–56; Compl. ¶ 39. *See also* discussion at p. 6, *supra*.) That occurred well before September 3, 2017, and thus is time-barred.

The comment by Cascina's supervisor that "sometimes people don't produce too much when they get older and sick… so they have to retire," occurred in January 2018. (DE 25-5 at 182–83.) To the extent that comment might support an NJLAD claim, then, it would not be time-barred.

Third, Cascina's three-day suspension for accessing her own medical records was ordered on August 31, 2017, outside the statute of limitations window. (25-2 ¶ 19.) The period during which she was actually suspended, however, ran from September 1 to September 6, 2017, straddling the statute of limitations cutoff. (DE 25-10.) The Supreme Court has stated that a cause of action for a claim of discrimination accrues when a plaintiff has "a complete and present cause of action," which happens when the plaintiff "can file suit and obtain relief" *Green v. Brennan,* 136 S. Ct. 1769, 1776 (2016). Here, Cascina could have filed suit under the NJLAD as soon as her allegedly discriminatory suspension was ordered. Nothing in the NJLAD compels the displacement of the standard rule governing when the statute of limitations begins to run. *See id.* at 1777–78.[3] Thus, because Cascina could have sued as soon as she was ordered suspended, on August 31, 2017, her cause of action began to accrue then and is barred by the statute of limitations.

### c. No continuing violation

In her opposition to summary judgment Cascina asserts that her claims are not time-barred because of the "continuing violation" doctrine:

> HUMC's discrimination is a continuing violation where HUMC is still holding the job for the Plaintiff, so the employment tie is still there. Moreover, the last time that Plaintiff worked for the

---

[3]   In contrast, the NJLAD explicitly states that in claims of discriminatory pay, a new cause of action accrues with each paycheck, N.J. Stat. Ann. § 10:5-12(a)—the state equivalent of the federal Lilly Ledbetter Fair Pay Act. *See* https://www.congress.gov/bill/111th-congress/senate-bill/181.

> defendant is March 15, 2018. The plaintiff filed the EEOC charge on January 4, 2019, which made the last discrimination date is [*sic*] March 15, 2018. Therefore, even discrimination that happened prior to the 300 days as of January 4, 2019 was not barred by the statute of limitations.

(Pl. Br. at 3.) The continuing violation doctrine "allows a plaintiff to pursue a claim for discriminatory conduct if he or she can demonstrate that each asserted act by a defendant is part of a pattern and at least one of those acts occurred within the statutory limitations period." *Sarno v. Wal-Mart Stores E., L.P.*, 2012 WL 5880361, at *4 (D.N.J. Nov. 20, 2012) (quoting *Smith v. Twp. of E. Greenwich*, 519 F. Supp. 2d 493, 505 (D.N.J. 2007) (cleaned up)); *see also Roa v. Roa*, 985 A.2d 1225, 1231 (N.J. 2010) (applying the continuing violations doctrine to analogous claim under NJLAD).

A hostile work environment claim is one such continuing violation. Cascina uses the phrase "hostile work environment" several times in her filings. (Compl. ¶ 21; DE 25-23 at 55.) In *Morgan*, the Supreme Court held that, while discrete discriminatory acts are not actionable if they are time-barred, a hostile work environment claim is "a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 113. The Supreme Court recently elaborated on *Morgan*, describing its holding as follows: "[A] hostile-work-environment claim is a single 'unlawful employment practice' that includes every act composing that claim, whether those acts are independently actionable or not." *Green*, 136 S. Ct. at 1778. The entire hostile environment claim may be considered timely, then, "[p]rovided that an act contributing to the claim occurs within the filing period." *Morgan* at 117. "[E]ven if a claim of discrimination based on a single discriminatory act is time barred, that same act could still be used as part of the basis for a hostile-work-environment claim, so long as one other act that was part of that same hostile-work-environment claim occurred within the limitation period." *Green*, 136 S. Ct. at 1781 n.7 (citing *Morgan*, 536 U.S. at 117).

9

"To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165–66 (3d Cir. 2013). The conduct that occurred prior to the limitation period must have involved similar conduct by the same individuals, suggesting a consistent ongoing pattern. *Id.* at 167. Thus, if properly alleged, a hostile work environment claim can encompass evidence of discriminatory acts that would otherwise be time-barred.

Cascina cannot successfully invoke the continuing violation doctrine for two reasons. First, she does not adduce sufficient evidence that HUMC maintained a hostile work environment within the legal meaning of that term. To establish a hostile work environment cause of action under the NJLAD, plaintiffs must satisfy each part of a four-part test: "[T]hey must show that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive." *Shepherd v. Hunterdon Developmental Ctr.*, 174 N.J. 1, 24 (2002) (*Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587, 603–04 (1993)). Cascina does not demonstrate a severe and pervasive course of violations by the employer. Instead, Cascina merely asserts that there is a continuing violation because "HUMC is still holding the job for the Plaintiff, so the employment tie is still there." (Pl. Br. at 3.) Second, none of Cascina's alleged claims of national origin discrimination fall within the statute of limitations period. Because she cannot meet the requirement that at least one act falls within the period, she cannot make out a hostile work environment claim that way. *See Mandel*, 706 F.3d at 165–66. Thus, "view[ing] the evidence presented through the prism of the substantive evidentiary burden," *Anderson*, 477 at 254, I find that there is not sufficient record support for a continuing violation theory, and thus her time-barred claims cannot be rescued.

10

To sum up: I find that all of Cascina's federal claims and her national origin discrimination claim under the NJLAD are time-barred. Her failure-to-accommodate and age discrimination claims under the NJLAD, however, are not time-barred, and I will examine them on the merits.

### d. Merits Discussion

I now examine the merits of the claims that are not time-barred, *i.e.,* Cascina's NJLAD age and disability claims. As to these, I find that the record does not contain sufficient evidence to support a jury finding in Cascina's favor. 243 F.3d at 138. Specifically, the evidence fails at the level of a prima facie case.

### i. *McDonnell Douglas* burden-shifting framework

Cascina argues that she was discriminated against by HUMC on the basis of her age and that HUMC failed to accommodate her disability. Because she lacks substantial direct evidence of discriminatory intent (such as statements of bias), she seeks to prove HUMC's discriminatory intent through circumstantial evidence.[4]

---

[4] A plaintiff may also seek to establish her case by the more difficult route of direct evidence. Where plaintiff proffers direct evidence, "the quality of evidence required to survive a motion for summary judgment is that which if believed, proves [the] existence of [a] fact in issue *without inference or presumption.*" *Bergen Commercial Bank v. Sisler*, 723 A.2d 944, 954 (N.J. 1999) (internal quotations omitted); *see also Kirschling v. Atl. City Bd. of Educ.*, 10 F. Supp. 3d 587 (D.N.J. 2014) (drawing this distinction); *Pray v. New Jersey Transit*, 2014 WL 684592, at *10 (N.J. Super. Ct. App. Div. Feb. 24, 2014) (same).

Cascina does point to one piece of evidence that could be cited as direct evidence of bias—the statement of her supervisor that "sometimes people don't produce too much when they get older and sick... so they have to retire." She primarily follows the more promising circumstantial route to prove discrimination by comparing the way she was treated to the way other employees were treated. (Compl. ¶ 42; DE 25-19 at 258–60.) *See Fuentes*, 32 F.3d at 765. Insofar as Cascina does attempt to proceed by direct evidence, she does not present any facts to show that "that decisionmakers placed substantial negative reliance on an illegitimate criterion" in this case her age in dealing with plaintiff. *See Bergen Com. Bank v. Sisler*, 157 N.J. 188, 208 (1999). The statement of the supervisor is couched in general terms, speaks not of adverse employments actions but rather of an employee's decision to retire, and was

When an employee seeks to prove an employer's discriminatory intent in an adverse employment action through circumstantial evidence, courts evaluate motions for summary judgment under the specialized burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell Douglas* test was formulated "to compensate for the fact that direct evidence of intentional discrimination is hard to come by." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 271 (1989) (O'Connor, J., concurring). That framework is used in Title VII cases, *id.* (majority opinion), ADA cases, *Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003), and ADEA cases, *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009). In NJLAD actions for employment discrimination, courts generally follow Title VII precedent. *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) ("This Court's discrimination inquiry is the same for claims filed under Title VII and the NJLAD ....") (citing *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 249 (3d Cir. 2006)). As relevant here, NJLAD cases adopt the *McDonnell Douglas* framework. *Bergen Commercial Bank v. Sisler*, 723 A.2d 944, 954 (N.J. 1999).

The *McDonnell Douglas* analysis is divided into three phases, shuttling the burden between the plaintiff and the defendant.

*Step One: The Prima Facie Case.* At the outset, a plaintiff must state a prima facie case of discrimination. *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). The elements of a prima facie case differ based on the form of discrimination alleged.

*Step Two: Legitimate Non-Discriminatory Reason.* If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant, who must articulate a legitimate basis for the actions to which

---

not shown to have been directed to Cascina in particular. It falls far short of direct proof of discrimination against Cascina.

plaintiff objects. *Burton*, 707 F.3d at 426; *Rodriguez v. Nat'l R.R. Passenger Corp.*, 532 F. App'x 152, 153 (3d Cir. 2013).[5]

*Step Three: Pretext.* Once the defendant has offered a non-discriminatory reason, the burden of production shifts back to the plaintiff. Now the plaintiff must present evidence to show that the defendant's stated reason is merely pretext for discrimination. *Id.*[6]

I address each of Cascina's claims in turn, focusing on the initial requirement of showing a prima facie case.

---

[5] "This burden is relatively light and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Burton*, 707 F.3d at 426 (internal quotations omitted). Indeed, at this stage, "the defendant need not prove that the articulated reason actually motivated its conduct." *Id.* (internal quotations omitted).

[6] The plaintiff can do that in either of two ways: (1) she can discredit defendant's proffered reason; or (2) she can offer evidence that discrimination was more likely than not a motivating or determinative factor in the adverse action. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). To meet that burden, the plaintiff may rely on direct or circumstantial evidence.

If the plaintiff relies on the first method (discrediting the defendant's proffered reasons), she faces a demanding standard: she must present evidence that allows a factfinder "reasonably to infer that *each* of the employer's proffered non-discriminatory reasons … was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Id.* (internal quotations and citations omitted). The plaintiff "must show such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Iadimarco v. Runyon*, 190 F.3d 151, 166 (3d Cir. 1999) (internal quotations omitted).

If the plaintiff relies on the second method (evidence that discrimination was a motivating factor), she can provide the required evidence in at least three ways: "by showing that the employer in the past had subjected [her] to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not of [her] protected class more favorably, or that the employer has discriminated against other members of [her] protected class or other protected categories of persons." *Fuentes*, 32 F.3d at 765.

13

### ii. NJLAD failure to accommodate disability

Generally, to establish a disability discrimination claim, a plaintiff must first establish a prima facie case under the NJLAD. To do so, she must show that "(1) he or she was handicapped or disabled within the meaning of the LAD; (2) he or she was qualified to perform the essential functions of the position of employment, with or without accommodation; (3) he or she suffered an adverse employment action because of the handicap or disability; and (4) the employer sought another to perform the same work after plaintiff had been removed from the position." *McLaurin v. Gen. Nutrition Centers, Inc.*, 2017 WL 2289004, at *4 (N.J. Super. Ct. App. Div. May 25, 2017) (citing *Gerety v. Atlantic City Hilton Casino Resort*, 184 N.J. 391, 399 (2005)).

The New Jersey Supreme Court, however, has recently held that to make out a prima facie case in a failure-to-accommodate claim, it is not necessary for the plaintiff to plead an adverse employment action. *Richter v. Oakland Bd. of Educ.*, 246 N.J. 507, 529–530, (2021), as modified (June 15, 2021) (holding that diabetic teacher denied an accommodation in the form of an earlier lunch break who managed to maintain her schedule with the aid of glucose tablets nevertheless could prevail on a failure-to-accommodate claim). Still, a plaintiff must establish four substantive elements "to show that an employer failed to participate in the interactive process" as required to reach a reasonable accommodation. *Victor v. State*, 203 N.J. 383, 416 (2010) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319 (3d Cir.1999)) Those elements are that "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Id.* (quoting *Taylor*, 184 F.3d at 319–20).

Cascina's claims fail under both the prima facie test and the specific failure to accommodate. First, Cascina has not demonstrated that, at the time

14

of her requested accommodation, her employer knew or had reason to believe she was a "disabled person" under the meaning of the law. "Where the existence of a handicap is not readily apparent, expert medical evidence is required." *Viscik v. Fowler Equip. Co.*, 173 N.J. 1, 16 (2002). There is no such expert evidence in this record. Moreover, when Cascina returned to work, her doctor's note did not place any restrictions on her activities. (DE 25-2 ¶ 35.) There was thus no reason for HUMC to believe that Cascina was disabled within the meaning of NJLAD, and she points to no evidence that she actually informed HUMC that she was disabled.

On the specific issue of failure to accommodate, as discussed in the previous paragraph, there is no evidence that HUMC possessed the knowledge of Cascina's disability that would have triggered the duty to accommodate. What is more, Cascina did not specifically refer to a disability when she requested what she now characterizes as an accommodation of her disability; rather, she testified, she requested to be excused from walking long distances because of snow and ice. (DE 25-19 at 221–22.) There is no evidence that Cascina ever, from January 2018 to today, specifically requested that HUMC provide an accommodation because of her disability. (DE 25-19 at 255.)

Because Cascina has failed to present evidence sufficient to make out a prima facie case of disability discrimination and failure to accommodate, summary judgment must be granted in favor of HUMC.

### iii. Age Discrimination

Nor does the record set forth a prima facie case of age discrimination. To make out a prima facie case, a plaintiff must show "(1) [s]he was a member of the protected class (*i.e.*, [s]he was over 40); (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment decision…; and (4) [her] employer's refusal to promote her occurred under circumstances that give rise to an inference of age discrimination. *McClement v. Port Auth. Trans-Hudson*,

505 F. App'x 158, 162 (3d Cir. 2012) (citing *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 300-01 (3d Cir. 2004)).[7]

Cascina does not allege any adverse employment action that occurred within the limitation period. Her supervisor's comment, though it might be used as evidence to bolster an otherwise adequate age discrimination claim, is not actionable because it did not affect the conditions of Cascina's employment.[8] In short, because Cascina does not allege that she suffered any adverse employment action, she did not meet her burden of proof and summary judgment must be granted in favor of the defendant on the age discrimination claim.

**Conclusion**

Defendant HUMC's motion for summary judgment (DE 25) is therefore granted. An appropriate order follows.

Dated: October 1, 2021

/s/ Kevin McNulty

Kevin McNulty
United States District Judge

---

[7]     *Richter, supra,* eliminated the adverse employment action requirement only with respect to a failure-to-accommodate claim. Its rationale was that the employer's failure to accommodate a disability creates an immediate injury that should be subject to correction without waiting for, *e.g.,* a termination of employment. A straight age discrimination claim under the NJLAD does not invoke the same concerns. For such a claim, the best indications are that the requirement of an adverse employment action remains in place. *See Hooker v. Novo Nordisk Inc.*, 2021 WL 3087786, at *3 (3d Cir. July 22, 2021); *see also Patikowski v. St. Peter's Univ. Hosp.*, 2021 WL 806943, at *6–7 (N.J. Super. Ct. App. Div. Mar. 3, 2021) (citing *Victor v. State*, 401 N.J. Super. 596, 615 (App. Div. 2008), *aff'd as modified*, 203 N.J. 383 (2010)); *Caballero v. Cablevision Sys. Corp.*, No. A-2778-17T4, 2019 WL 1848747, at *1 (N.J. Super. Ct. App. Div. Apr. 24, 2019) (citing *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 447 (2005)).

[8]     Cascina's claim that she was discriminatorily forbidden from attending CPR trainings is time-barred, but in any event would not rise to the level of an adverse employment action. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 744 (1998) (defining an adverse employment action as "a significant change in employment status, such as discharge, demotion, or undesirable reassignment").